UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 28, 2016
```

------------------------------------------------------X
: 
NATA S. BOB, :
 :
                        Plaintiff, :          14 Civ. 9727 (KPF)
 :
            v. :          OPINION AND ORDER
 :
MADISON SECURITY GROUP, INC., :
 :
                        Defendant. :
 :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Plaintiff Nata S. Bob ("Bob" or "Plaintiff") brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 301 (the "NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131 (the "NYCHRL").  In brief, he alleges employment discrimination in the forms of failure to accommodate his religious practices, retaliation, and unlawful termination.  Defendant Madison Security Group, Inc. ("Madison" or "Defendant"), Plaintiff's former employer, has moved for summary judgment on all of Plaintiff's claims.  For the reasons set forth in this Opinion, Defendant's motion is granted in its entirety.

## BACKGROUND[1]

### A.    Factual Background

From November 2009 until approximately February 2012, Plaintiff was employed as a security guard by Madison.  (Def. 56.1 ¶ 2).  Initially, Plaintiff was referred to Madison by Rescue One Employment Services, an employment agency, and was interviewed at Madison by Director of Human Resources Vincent McCaskill.  (*Id.* at ¶¶ 3-4).  During the relevant time period, Madison used a standardized interviewing protocol because of the volume of employment applications it received:

> Under this standard procedure, each candidate would submit an Employment Application to Madison prior to his or her interview.  The application was then reviewed by a member of the Human Resources Staff at Madison before and during an interview of the candidate.  As a rule, and as would be expected, during each interview, candidates were asked about any scheduling restrictions, conflicts, or other limitations upon their availability to work.  Scheduling information disclosed by the candidate in the interview was then noted on the Employment Application.

(McCaskill Aff. ¶ 4).

---

[1]     The facts stated herein are drawn from the Amended Complaint ("Am. Compl.," Dkt. #9); Defendant's submissions in connection with the instant motion, including Defendant's Local Rule 56.1 Statement ("Def. 56.1," Dkt. #37), the Affidavits of Joseph Lizardi ("Lizardi Aff.," Dkt. #40) and Vincent McCaskill ("McCaskill Aff.," Dkt. #41) and the exhibits attached thereto, and the Certification of Felicia Watson ("Watson Cert.," Dkt. #42) and the exhibits attached thereto; and the transcript of Plaintiff's deposition ("Bob Tr.").  For ease of reference, Defendant's opening brief is referred to as "Def. Br." (Dkt. #43), Plaintiff's response in opposition is referred to as "Pl. Opp." (Dkt. #45), and Defendant's reply brief is referred to as "Def. Reply" (Dkt. #46).  Citations to Defendant's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.

McCaskill avers that he interviewed Plaintiff using this protocol on or about November 23, 2009, with the aid of a written employment application that Plaintiff had signed and dated as of November 20, 2009.  (McCaskill Aff. ¶ 5 & Ex. A).[2]  During his interview with McCaskill, Plaintiff did not cite a need for any religious accommodation, as evidenced by McCaskill's notation on his interview notes that Plaintiff could work "ANY DAYS."  (Def. 56.1 ¶ 6 (capitalization in original)).  Nor did Plaintiff's employment application identify a required religious accommodation.  (*Id.* at ¶ 5).

Put simply, Madison denies receiving any notice of Plaintiff's request for a religious accommodation.  (Def. 56.1 ¶ 8; *see also id.* at ¶ 14 ("These types of scheduling accommodations are commonly provided to Security Guards employed at Madison, in part, due to the fact that Security Guards like Nata Bob provide fungible services that are readily and commonly duplicated by other employees.  Madison regularly provides religious accommodations to Muslim employees like those allegedly sought by Nata Bob in this case.")).  Plaintiff does not dispute that he never advised McCaskill, Madison Human Resources Manager Melinda Ortiz, or Madison Vice President Joseph Lizardi regarding any need for an accommodation.  (*See, e.g.*, Bob Tr. 115-16, 146-47).  Instead, Plaintiff asserts that his interview with Madison in November 2009 was in fact conducted by an employee named Paul Valli;

---

[2]     As discussed more fully in footnote 4, Plaintiff maintains that he misdated the application, and that it was actually signed on November 25, 2009, when he went to obtain his uniforms.  Resolution of the instant motion does not require the Court to resolve the specific issue of the timing of the employment application.

that he advised Valli that he could not work on Fridays for religious reasons; and that Valli agreed that Madison would not schedule him for Friday shifts. (*Id.* at 47-48, 80-82).[3]  Significantly, however, Madison has no record of any employee named Paul Valli, nor of any employee bearing a similar name who could have been involved in Plaintiff's hiring.  (Def. 56.1 ¶¶ 7-9).[4]

---

[3]     Plaintiff was imprecise in his deposition testimony regarding the specific accommodation that he sought from Valli, even as he was certain that Valli agreed.  At first, he recalled advising Valli that he "would prefer Friday as my [day] off for Sabbath," but that "[i]f it is viable for me, I don't have a problem working because some Muslims take things to the extreme."  (Bob Tr. 81).  One transcript page later, Plaintiff agreed with defense counsel's characterization that "to the extent that you weren't working Fridays and you were required to work a Friday, you could have worked as long as it didn't conflict" with Plaintiff's time of prayer.  (*Id.* at 82).  And two transcript pages after that, Plaintiff recalled his statements to Valli as: "I would like to have Friday off without any strings attached because it is my Sabbath day but because you are so flexible with me, I also would give you that, promise that if you need me on Fridays, and it doesn't conflict with my Sabbath, I don't mind working it, I just have to find somebody to wait for me by my wife's side.  Because people take Islam to the extreme, I'm not that type." (*Id.* at 84).

[4]     Even affording Plaintiff latitude because of his uncounseled status, the Court observes that the transcript of Plaintiff's deposition contains a narrative of his interview with Valli that borders on the fanciful.  For starters, Plaintiff asseverates that he was hired by Valli during the interview without having filled out any written application — and, indeed, without providing Valli *any* information about his prior experience as a security guard.  (*See, e.g.*, Bob Tr. 58 (acknowledging that he was "hired by Madison Security on 11/23/09, without filling out a single document"), 63 ("Q. So, it's your testimony that — I'm just trying to understand it.  You went to Madison on the 23rd, you were interviewed by Paul Valli, he hired you on the spot without filling out a single document; is that correct?  A. Yes."), 85 (noting that Valli "[a]bsolutely" did not ask Plaintiff about prior employers)).  Plaintiff was equally adamant that the interview with Valli took place on November 23, 2009, and that his written application for employment at Madison was not completed and submitted until November 25, 2009 — despite acknowledging that he had signed several documents under oath that placed his application date as November 20, 2009.  (*Id.* at 52-55).  And when confronted with numerous demonstrably false statements in the employment history section of his written application, Plaintiff claimed failures of recollection.  (*Id.* at 66-80; *see also id.* at 88 (recalling discussing with Valli an on-the-job accident that occurred at an employer that Plaintiff had failed to list in his application)).

Finally, Plaintiff claims never to have seen Valli again after his interview, not even to seek his assistance in early 2012 when Plaintiff was scheduled for Friday shifts, explaining:

> It was done.  He interviewed me, that's it.  That was his job.  And then even if I wanted to see him, I will not be able to see him because of the demands.  People were too many.  You have to take care of your business and go.

As relevant to the instant litigation, Plaintiff alleges that in early 2012, Madison began scheduling him to work Friday shifts. (Bob Tr. 102-05). In response, Plaintiff alleges, he advised Madison's dispatchers that he could not work these shifts, but Madison continued to schedule him for Friday shifts nonetheless. (*Id.* at 109-11).[5] Plaintiff refused to accept any 40-hour weekly

---

(*Id.* at 62; *see also id.* at 50).

The Court recognizes that, on a motion for summary judgment, a court generally "should not weigh evidence or assess the credibility of witnesses." *Hayes* v. *N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *United States* v. *Rem*, 38 F.3d 634, 644 (2d Cir. 1994)). However, the Second Circuit has recognized that, "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys* v. *City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted); *see also id.* at 555 ("In the circumstances presented in the instant case — where [i] the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and [ii] the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that 'no reasonable person could believe Jeffreys'[s] testimony' — we hold that the District Court did not err by awarding summary judgment." (internal citation omitted)). In large measure, the Court resolves this motion on bases other than Plaintiff's credibility. That said, having read with care Plaintiff's deposition transcript, the Court is confident that no reasonable juror could believe Plaintiff's shifting recollection of events.

[5]    Plaintiff offered several different versions of his conversation with Madison's dispatchers. (*See* Bob Tr. 102-15, 117-19, 120-22, 125-27, 147-48). In his first recounting of the conversation with a Madison dispatcher, Plaintiff recalled the back-and-forth as follows:

> Your schedule had changed and you will be working on Fridays. I said no, I'm not. Your shift has changed, your schedule had changed, and your post had changed, the station. So where I was guarding, I will be moved to Twin Parks Towers in the Bronx. Which I said no. I'm not going. I'm not going to work on Fridays. Or if you don't work on Fridays, then we will take you off the schedule. Go ahead. And they took me off the schedule.

(*Id.* at 104-05). Only after he was prompted by defense counsel did Plaintiff indicate that he had advised the dispatcher that he had been given Fridays off as a religious accommodation. (*Id.* at 114 ("Q. You responded saying I can't work 8:00 to 4:00 on Friday because of my Sabbath obligation? A. That's right.")). Later in his deposition, however, Plaintiff suggested that he had never advised the dispatcher of his religious obligations:

shift that included a Friday schedule.  (Pl. Opp. 4).  Plaintiff further alleges that
he reached out to McCaskill, but his call was not returned; as a result, Plaintiff
advised no Madison supervisor of his concerns with Friday shifts.  (*Id.* at 114-
15; *see also id.* at 115-16 (indicating that he called McCaskill and Bob Baxter,
and did not call Ortiz or Lizardi)).

Although Plaintiff had previously written letters to Madison management
disputing scheduling, pay, and labor issues, he did not write a letter to
Madison regarding the conflict between his assigned Friday shifts and his
religious obligations.  (Def. 56.1 ¶¶ 11-12, 16-17, 24; *see also* Bob Tr. 33
(indicating that he did not write because he had left messages by telephone)).
Plaintiff further stated that he declined to write a letter to management about
the issue, as the matter of his religious practices "was already settled in the
interview" with Valli.  (Def. 56.1 ¶ 26 (citing Bob Tr. 138-39)).  Further, while
neither side has offered contemporaneous evidence that Plaintiff left messages
with Madison personnel, Defendant has introduced personnel records reflecting
numerous calls made *to Plaintiff* regarding the rejected shifts that went
unanswered and unreturned.  (Lizardi Aff., Ex. C).

---

Q. And now you are saying — what my question was, did you tell
the dispatcher that you can work on Friday as long as the schedule
didn't conflict with your prayer time?

A. I don't have it because the dispatcher did not give me any chance
or any room to discuss anything.  That's what I'm telling you.  The
arrogance in them is something that look, oh, your schedule is
changed.  You will be working 8:00 to 4:00 at River Park Tower. I
said no, I'm not.  And I don't have to tell her anything else.

(*Id.* at 191).

As a result of Plaintiff's failure to report for any shifts that included hours on a Friday, his schedule was reduced and ultimately eliminated, although Madison maintains that Plaintiff was not formally terminated.  (Def. 56.1 ¶¶ 22, 30).  Plaintiff does not dispute this, stating in his deposition that his termination was effected by Madison "taking [him] off the schedule, [and] refusing to resolve" the issue, rather than formally terminating him.  (Bob Tr. 162).

**B.    Procedural Background**

On or about May 10, 2012, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC"), alleging discriminatory conduct by Defendant.  (Compl. 5-6 (Plaintiff's statement accompanying EEOC complaint)).  On November 4, 2014, the EEOC dismissed Plaintiff's claim and issued a Notice of Right to Sue letter.  (*Id.* at 7).  On December 1, 2014, Plaintiff initiated this action, *pro se*, claiming that Defendant had violated his rights under Title VII.  (*Id.* at 2-3).  Then, on February 9, 2015, Plaintiff filed an Amended Complaint ("Am. Compl."), asserting claims under Title VII, the NYSHRL, and the NYCHRL, but keeping his pleading otherwise the same.  (Dkt. #9).

On April 25, 2016, Defendant filed the instant motion for summary judgment.  (Dkt. #37, 39-44).  Plaintiff filed his opposition papers, also styled as a "motion for summary judgment," on May 27, 2016 (Dkt. #45), and briefing was completed with the filing of Defendant's reply papers on June 23, 2016 (Dkt. #46).

**DISCUSSION**

**A.     Applicable Law**

    **1.     Summary Judgment Motions Generally**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *accord Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party failed to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248; *see also Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). However, in considering "what may reasonably be inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

### 2.    Summary Judgment Motions Involving *Pro Se* Plaintiffs

In a *pro se* case, the court must take an additional step and liberally construe the *pro se* party's pleadings "to raise the strongest arguments that

they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Generally speaking, where facts stated in a moving party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the non-moving party, a court is directed to find such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent ... controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). *Pro se* litigants "are not excused from meeting the requirements of Local Rule 56.1." *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear* v. *1-800-BEARGRAM*, 373 F.3d 241, 246 (2d Cir. 2004)). Nevertheless, even where there is incomplete compliance with the Local Rules, a court retains discretion "to consider the substance of the plaintiff's arguments." *Id.* (citing *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."   (internal quotation marks omitted))); *see also Hayes* v.

10

*Cty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's *pro se* status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").  In the instant matter, in deference to Plaintiff's *pro se* status, and his failure to file a responsive Local Rule 56.1 Statement, the Court has conducted a searching review of the record.

### 3.    Summary Judgment Motions in Discrimination Cases

#### a.    The *McDonnell-Douglas* Framework

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Employment discrimination claims under Title VII are analyzed using the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See, e.g., Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

At the first step of the *McDonnell Douglas* analysis, a plaintiff must present evidence supporting a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802.  To meet this burden, a plaintiff must show that: (i) he belongs to a protected class; (ii) he was qualified for the position at issue; (iii) he suffered an adverse employment action; and (iv) that action occurred under circumstances giving rise to an inference of discrimination. *See id.*; *Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  The Second Circuit has emphasized that the "burden of establishing a *prima facie* case is

*de minimis.*"  *Abdu-Brisson* v. *Delta Air Lines, Inc.,* 239 F.3d 456, 467 (2d Cir.

2001) (collecting cases).

If a plaintiff successfully presents a *prima facie* case of discrimination,

this shifts the burden to the defendant to proffer legitimate, nondiscriminatory

reasons for the adverse employment action.  *Abdu-Brisson,* 239 F.3d at 466,

468-69.  The defendant's burden at this stage is also "light."  *Greenway* v.

*Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998).  At the third step of the

*McDonnell Douglas* framework, the burden shifts back to the plaintiff to prove

intentional discrimination by a preponderance of the evidence.  *See Holcomb*,

521 F.3d at 138; *Fields* v. *N.Y. State Office of Mental Retardation &*

*Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997).  "A plaintiff may

prove discrimination indirectly either by meeting the requirements of *McDonnell*

*Douglas* and showing that the employer's stated reason for its employment

action was pretext to cover-up discrimination, or by otherwise creating a

'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence'

that together give rise to an inference of discrimination."  *Vega* v. *Hempstead*

*Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (internal citations

omitted).

> **b.    Evaluating Failure-to-Accommodate Claims Under the**
> ***McDonnell Douglas* Framework**

As the Second Circuit has explained, "[i]n brief, it is an unlawful

employment practice … for an employer not to make reasonable

accommodations, short of undue hardship, for the religious practices of [its]

employees and prospective employees."  *Baker* v. *The Home Depot*, 445 F.3d

541, 546 (2d Cir. 2006) (citation omitted); *see also Cosme* v. *Henderson*, 287 F.3d 152, 157-58 (2d Cir. 2002); *see generally* 42 U.S.C. § 2000e(j) (obligating employers to make reasonable accommodations for the religious practices of their employees, absent a showing of undue hardship).  To state a *prima facie* case for religious discrimination in the form of a failure to accommodate, a plaintiff must demonstrate that "[i] he or she has a bona fide religious belief that conflicts with an employment requirement; [ii] he or she informed the employer of this belief; [and] [iii] he or she was disciplined for failure to comply with the conflicting employment requirement."  *Philbrook* v. *Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) (internal quotation marks omitted), *aff'd*, 479 U.S. 60 (1986); *accord White* v. *Andy Frain Servs.*, Inc., 629 F. App'x 131, 134 (2d Cir. 2015) (summary order); *see also Torres* v. *Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (stating that "claims brought under [the NYSHRL] are analytically identical to claims brought under Title VII").

"Once a *prima facie* case is established by the employee, the employer must offer [him] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  *Baker*, 445 F.3d at 546 (citation omitted).  Finally, "[a]lthough the *McDonnell Douglas* framework applies to cases alleging employment discrimination under the NYCHRL, courts must construe NYCHRL discrimination claims 'independently from and more liberally than' their state analogues."  *Stavis* v. *GFK Holding, Inc.*, 769 F. Supp. 2d 330, 337 n.8 (S.D.N.Y. 2011) (quoting *Loeffler* v. *Staten Island Univ. Hosp.*, 583 F.3d 268, 278 (2d Cir. 2009)); *see Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*,

715 F.3d 102, 110 (2d Cir. 2013) (holding, in the context of a gender-discrimination claim under the NYCHRL, that "the plaintiff need only demonstrate by a preponderance of the evidence that [he] has been treated less well than other employees because of [his] gender" (internal quotation marks and citation omitted)); *see also Weber* v. *City of N.Y.*, 973 F. Supp. 2d 227, 263 (E.D.N.Y. 2013) (observing that the Second Circuit has not had occasion, since *Mihalik*, to address the standard applicable to failure-to-accommodate claims under the NYCHRL).

### c. Evaluating Retaliation Claims Under Title VII, the NYSHRL, and the NYCHRL

"To make out a prima facie case of unlawful retaliation, a plaintiff must prove that: [i] he participated in a legally protected activity; [ii] his employer knew of the protected activity; [iii] an adverse employment action ensued; and [iv] a causal connection existed between the protected activity and the adverse employment action." *Bowles* v. *N.Y.C. Transit Auth.*, 285 F. App'x 812, 814 (2d Cir. 2008) (summary order); *accord Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 315 (2d Cir. 2015). If the plaintiff presents a *prima facie* case, "a presumption of retaliation arises and the defendant must 'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" *Venezia* v. *Luxoticca Retail N. Am. Inc.*, No. 13 Civ. 4476 (RJS), 2015 WL 5692146, at *11 (S.D.N.Y. Sept. 28, 2015) (quoting *Hicks* v. *Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (Title VII)); *see also Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2012) (NYSHRL). If the defendant provides such an explanation, "the presumption of retaliation dissipates," *Jute* v. *Hamilton*

14

*Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005), and the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action," *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 133 S. Ct. 2517, 2528 (2013).  *Accord Ya-Chen Chen* v. *City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).

Under the NYCHRL, a prima facie case of retaliation requires that a plaintiff show "[i] he participated in a protected activity; [ii] the defendant knew about his participation; [iii] the defendant took an employment action that disadvantaged the plaintiff *in any manner*; and [iv] a causal connection existed between the protected activity and the negative employment action."  *Fattoruso* v. *Hilton Grand Vacations Co.*, 525 F. App'x 26, 27 (2d Cir. 2013) (summary order) (emphasis in original).  If the plaintiff articulates a *prima facie* case, the defendant must articulate "a legitimate, non-retaliatory reason for the challenged action," after which the plaintiff must prove, "by a preponderance of the evidence, that the conduct was reasonably likely to deter a person from engaging in protected activity."  *Venezia*, 2015 WL 5692146, at *12 (citation omitted); *see also Ya-Chen Chen*, 805 F.3d at 76 ("In other words, summary judgment is appropriate if 'the record establishes as a matter of law' that discrimination or retaliation 'play[ed] no role' in the defendant's actions." (citing *Mihalik*, 715 F.3d at 110 n.8)).

**B.    Analysis**

**1.    Defendant Is Entitled to Summary Judgment on Plaintiff's Failure-to-Accommodate Claim**

In his Amended Complaint, Plaintiff indicated that he was bringing claims for discrimination, including wrongful termination and retaliation, on the basis of religion.  When describing the details of the claimed discrimination, however, Plaintiff alleged facts sounding in a claim that Defendant had failed to accommodate Plaintiff's religious practices.  Specifically, Plaintiff stated that he "[is] a Muslim and qualif[ied] for his position" with Defendant, and that he informed Defendant that due to his religion, he "[could not] work on [his] Sab[b]ath Day (Friday)."  (Am. Compl. 3).  As a result, Plaintiff alleges, he "was told [his] schedule was changed and [he would] be working on Fridays."  (*Id.*).  Then, when he "refused to work [the] Friday shift," his hours were reduced and his schedule was ultimately eliminated.  (*Id.*).

Along the same lines, in his factual statement accompanying his EEOC complaint, submitted as a portion of his Amended Complaint, Plaintiff states that "[i]n January 2012, [he] requested a reasonable accommodation for religious observance," asking "that [he] not be scheduled to work on Fridays, which is [his] Sab[b]ath."  (Am. Compl. 5).  Accordingly, the Court construes Plaintiff's primary claim as one for failure to provide a reasonable accommodation for his religious practices, which, as discussed above, occurs when an employer fails, absent undue hardship, to make reasonable accommodations for an employee's religious obligations of which the employer is aware.  *See Baker*, 445 F.3d at 546-47.   On this record, Plaintiff has failed

16

to raise a genuine issue of material fact concerning the first (obligation) or second (notice) elements of the failure-to-accommodate claim, and Defendant is therefore entitled to summary judgment as a matter of law.

Ascertaining the protected activity in this case is complicated by Plaintiff's vacillation in describing his religious obligation and the concomitant accommodation he sought.  In this regard, Defendant has contested outright the *bona fides* of Plaintiff's obligation, and so the Court begins by considering that issue.  To determine whether a plaintiff holds a *bona fide* religious belief, the Court is bound to consider "whether the beliefs professed by [the plaintiff] are sincerely held and whether they are, in his own scheme of things, religious."  *Eatman* v. *United Parcel Serv.*, 194 F. Supp. 2d 256, 268 (S.D.N.Y. 2002) (quoting *Patrick* v. *LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).  "Courts, congenitally incapable of judging the religious nature of an adherent's beliefs based on their content, employ a 'subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system.'"  *Id.* (quoting *Patrick*, 745 F.2d at 157).  "In this approach, a person's claim 'that his belief is an essential part of a religious faith must be given great weight.'"  *Id.* (quoting *Patrick*, 745 F.2d at 158).

In the Amended Complaint, Plaintiff claimed that he could not work on Fridays, which he explained was the Muslim Sabbath day, and that Defendant violated his rights in scheduling him for Friday shifts.  Defendant challenges the *bona fides* of Plaintiff's religious beliefs, however, based on Plaintiff's equivocation during his deposition.  (*See* Def. Br. 9 ("Plaintiff has repeatedly

testified that his religious beliefs permit him to work on Fridays at his discretion but [he] never provided Madison with any option with respect to Friday work.")).  As Plaintiff first testified during his deposition, according to his Muslim beliefs, work on Fridays was permitted insofar as it did not interfere with the Friday prayers: for "the Friday prayer, you have to stop everything[.] [I]f you stop everything, then after the Friday prayer, you are supposed to go to your family, but they also advise you that you [may] go and seek some livelihood exemptions."  (Bob Tr. 16).  Later, Plaintiff testified that:

> If it is viable for me, I don't have a problem working because some Muslims take things to the extreme.  I'm not that type.  It is moderate.  I can work if it doesn't affect me but I prefer Friday as my off for Sabbath.  That is our Sabbath.  You can do whatever you want, but this is a day you should not work….  [W]e have to be flexible but I need Friday off specifically, but it doesn't mean that I will not be able to accommodate that if it doesn't conflict with my time of prayer.

(Bob Tr. 81-82).

Ultimately, the Court concludes that Plaintiff has failed to satisfy the element of conflict with a *bona fide* religious belief, not merely because of the inconsistencies between the allegations in this case and Plaintiff's deposition testimony, but because his own work schedule makes plain Plaintiff's willingness to work full shifts on Fridays.  Specifically, Defendant has introduced records from Kings Security ("Kings"), Plaintiff's employer from January 2013 until April 2015; these records reflect Plaintiff working shifts of

at least eight hours' duration on 48 different Fridays.  (*See* Watson Cert.,
Ex. B).[6]

In his opposition papers, Plaintiff contests the relevance of his work for
Kings, which work he claims reflects his subsequent employer's "[s]chedule
flexibility":

> I worked on Fridays as long as it [did] not interfere with
> my Friday prayers or … [another] guard will hold [my
> position]….  That is how flexible it is for me at Kings
> Security….  Kings is very considerate with my plights so
> I will serve them just like I did at [Madison].

(Pl. Opp. 8).  However, Plaintiff's time records from Kings belie any such
accommodation.  Indeed, the Human Resources Department at Kings had no
request for a religious accommodation from Plaintiff on file, and no
arrangement for other employees to cover Plaintiff's shift so that he could leave
for prayers.  (*See* Watson Cert. ¶¶ 10-12).  What is more, Plaintiff's "Time Clock
Agreement" with Kings indicates his responsibility for clocking in on an hourly
or half-hourly basis (Watson Cert., Ex. A at 3), and his time records do not
reveal any gaps during his shifts (*id.*, Ex. B).  Accordingly, the Court finds that
no reasonable juror could conclude that Plaintiff had a sincerely held religious
belief that conflicted with working on Fridays.

---

[6]     In certain portions of his deposition, Plaintiff appears to suggest that his most
important Friday prayers occurred at or about 4:00 p.m.  (*See* Bob Tr. 30 ("[I]f I say that
okay, I will work on Fridays, and then they come and schedule me 8:00 to 4:00, that's a
problem.  Because then I have to leave the site and go and pray, which would result in
dismissal.  If I say that okay, 4:00, most likely the time I should be getting ready to go
to work, would be the time for prayer or you will be late.")).  To the extent this is the
case, the records from Kings of Plaintiff's Friday shifts reveal that 11 of the 48 shifts
spanned 4:00 p.m.  (*See* Watson Cert., Ex. B, Dkt. #42-3, at 10, 13-19, 22-24).

In any event, even were the Court to accept that Plaintiff has a sincerely held religious belief that conflicts with Friday shifts, his *prima facie* case still fails on the notice element: Plaintiff has failed to demonstrate that he notified Madison of his need for a religious accommodation prior to the time when the alleged "conflicting employment requirement" arose.  *See Philbrook*, 757 F.2d at 481.  Plaintiff suggests two instances in which individuals at Madison were advised of his dispreference for Friday shifts: during his interview with Paul Valli in 2009, and when he was first scheduled for such shifts in early 2012.  A careful review of the record reveals no genuine issue of fact disputing that the first request was not received by anyone at Madison, while the second was both belated and directed to individuals who lacked authority to grant Plaintiff an accommodation.

 "To satisfy the second element [of an accommodation claim], a plaintiff must properly notify the employer of the plaintiff's conflicting religious belief," and must "provide proper notification" *before* the time the conflicting employment requirement arises in order to give his employer "sufficient notice to allow them to work out a satisfactory arrangement."  *Hussein* v. *Pierre Hotel*, No. 99 Civ. 2715 (DC), 2001 WL 406258, at *3-4 (S.D.N.Y. Apr. 20, 2001); *cf. Martinez* v. *Amalgamated Transit Union*, No. 03 Civ. 6291 (DGT), 2005 WL 1485246, at *4 (E.D.N.Y. June 23, 2005) ("[W]ithout a showing that an employer had knowledge that an employee is a member of a particular group, there can be no showing of discrimination.").  Plainly, a defendant "cannot be

expected to alleviate a religious conflict of which it is unaware." *Eatman*, 194

F. Supp. 2d at 269.

Plaintiff argues that he informed Paul Valli of this need during his 2009

interview, yet Defendant has presented overwhelming evidence that Valli, if he

exists at all, never worked for Madison, and certainly did not interview Plaintiff

for his position there. (*See* Lizardi Aff. ¶¶ 4 ("Throughout my employment at

Madison since its inception, I have regularly interacted with <u>all</u> members [of]

management and Human Resources staff and <u>no</u> individual named Paul Valli,

or any individual with a similar name, has <u>ever</u> been directly or indirectly

employed at Madison or otherwise involved in the hiring process at Madison."

(emphases in original)), 6-7 (describing Defendant's employee database search);

*see also id.*, Ex. A (Defendant's historic employee list for last names beginning

with "V," reflecting no employee named Paul Valli)).

In his opposition papers, Plaintiff persists that during his interview, he

"told Mr. Paul Valli that … [he] would not work on Fridays if it conflicts with his

time of prayer," and "Valli agreed and granted the request." (Pl. Opp. 2).

Confronted with the surfeit of evidence that Plaintiff's interview was in fact

conducted by Vincent McCaskill on November 23, 2009, Plaintiff contends that

Defendant (i) "lied about not employing Paul Valli," and (ii) failed to dispute

Valli's employment in an earlier response to the EEOC. (*Id.* at 3, 15). Neither

contention is sufficient to create a genuine issue of material fact.

With respect to the first point, as the Second Circuit has stated,

"[r]eliance upon conclusory statements or mere allegations is not sufficient to

defeat summary judgment." *Woods* v. *Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) (summary order).[7]  Here, Plaintiff has only summarily stated that Defendant is lying about its employment records and its receipt of notice of his religious practices.  In employment-discrimination cases, in which the intent of the employer can often be difficult to ascertain, a court must "carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanation of its actions," *Cobian* v. *New York City*, No. 99 Civ. 10533 (KMW) (AJP), 2000 WL 1782744, at *8 (S.D.N.Y. Dec. 6, 2000), and the Court has done so here.  The fact remains, however, that no evidence exists to suggest Plaintiff informed any Madison employee that he could not work on Fridays until, at the earliest, he had already been assigned to work on Fridays.  Even then, Plaintiff appears only to have mentioned the conflict to company dispatchers, and appears not to have communicated his request for a religious accommodation to *any* supervisory, managerial, or Human Resources personnel at Madison — even though Plaintiff testified that at least one such manager, Joseph Lizardi,

---

[7]     *See Goenaga* v. *March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (internal citations omitted):

> When the defendant moves for summary judgment on the ground that there is an absence of evidence to support [an] essential element, the plaintiff's burden of producing such evidence in opposition to the motion is *de minimis*.  Nonetheless, the plaintiff cannot meet this burden through reliance on unsupported assertions.  Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor.  The motion "will not be defeated merely … on the basis of conjecture or surmise." The party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or "upon the mere allegations or denials of the adverse party's pleading[.]"

"would have helped" Plaintiff had Lizardi been made aware of the situation. (Bob Tr. 152).

With respect to Plaintiff's second argument, that Defendant failed to dispute Valli's employment in its EEOC response, the Court has no basis for so concluding. Plaintiff elected to provide only portions of his EEOC submission to the Court, and the portions that he did provide do not mention Valli at all. Accordingly, the Court has no basis to conclude that Valli was mentioned in that submission, and thus, Defendant's alleged failure to dispute Valli's existence or employment in that action does not undercut its position here.

Plaintiff's claim that Madison knew of and agreed to a religious accommodation of no Friday shifts at the time of his hiring in 2009 is also belied by Plaintiff's EEOC-related submissions. On March 8, 2012, Plaintiff sent a letter to Defendant via his attorney; the letter recited that "[i]n January 2012, [Plaintiff], a Muslim, requested a reasonable accommodation for religious observance," after which his schedule was reduced. (*See* Pl. Opp., Ex. 3A). Plaintiff then echoed this timeline in the sworn statement accompanying his EEOC charge. (*See id.* Ex. 4A at ¶¶ 3-4 ("In January 2012, I requested a reasonable accommodation for religious observance.... The company then reduced my work hours from a full time schedule to 8 hours a week and, after February 5, 2012, the Company refused to schedule me for any further shifts.")).[8]

---

[8]     Defendant contends that Plaintiff's failure to appear for Friday shifts is ultimately attributable to his holding a separate job during the precise time he was working for Defendant. (Def. Br. 10 (citing Watson Cert., Ex. A at 6)). Ultimately, because this

These accounts contradict Plaintiff's current position that he informed Madison upon his hiring in 2009 of his obligation to take Fridays off.  Although Plaintiff now claims that these references to January 2012 by his attorney and in his own sworn statement were mere "errors" (*see* Bob Tr. 212-14), the Court finds the contradiction between Plaintiff's sworn statement to the EEOC and his sworn statement in his Amended Complaint to be problematic.

In his opposition papers, Plaintiff further claims that he "reiterated" his request not to be scheduled on Fridays in January 2012.  (Pl. Opp. 4). However, even if made, such notice is insufficient to support a claim for failure to accommodate, inasmuch as: (i) the notice was given *after* Madison scheduled him for Friday shifts; (ii) Plaintiff simply (and immediately) refused to show up for any part of his 40-hour shift, rather than attempting to work out an accommodation with Madison concerning Friday hours; and (iii) the notice was only given to Madison dispatchers, who lacked the authority to grant accommodations.  *See Hussein*, 2001 WL 406258, at *4 ("As [Plaintiff] did not give [Defendants] sufficient notice to allow them to work out a satisfactory arrangement with him, a reasonable juror could only conclude that [Plaintiff] did not properly notify [Defendants] of his demands."); *see also id.* at *3 (collecting cases).

---

Court determines that Plaintiff has failed to present a *prima facie* case of failure-to-accommodate discrimination, the Court need not address this point, which would require an assessment of the truthfulness of Plaintiff's testimony in contrast to his later employment application.

For all of the reasons discussed in this section, no reasonable fact-finder could find that Plaintiff had satisfied his burdens of demonstrating either a conflict with a sincerely held religious practice or notice to Madison regarding any such conflict.  Indeed, on this record, Plaintiff has failed even to identify a genuine issue of material fact concerning either element.  Accordingly, summary judgment is warranted in favor of Defendant on Plaintiff's failure-to-accommodate claim.[9]

### d.    Defendant Is Entitled to Summary Judgment on Plaintiff's Retaliation Claim

In the same vein as his discrimination claim, Plaintiff's proffered evidence of retaliation is his claim that Defendant assigned him to Friday shifts after Plaintiff informed Defendant that he could not work on Fridays.  However, this claim does not sound in retaliation, which requires that an employee engage in a protected activity; that his employer know of that activity; and that the employer *consequently* take an adverse employment action.  *See Bowles*, 285 F. App'x at 814.  Instead, Plaintiff's claim only echoes Defendant's alleged failure to adhere to his requested accommodation in the first place.  As discussed above, because Plaintiff failed to establish a failure-to-accommodate claim regarding Friday shifts, he cannot establish that Defendant discriminated

---

[9]    Any argument that Plaintiff was terminated on the basis of his religion must fail for the same reason that his accommodation claim fails — there is simply no evidence that Plaintiff notified Defendant that he was a practicing Muslim who could not be scheduled for Friday shifts.  Absent evidence that Defendant was aware of Plaintiff's religious obligations, no reasonable juror could conceivably find that Plaintiff was terminated on that basis.

against him by assigning him to Friday shifts, or that Defendant "retaliated" by assigning him to these shifts.

To the extent that Plaintiff's claim for retaliation instead hinges on his prior complaints to Defendant unrelated to his religion — regarding "denial of equal pay, denial of holiday pay, and double shifts" (*see* Am. Compl. 5) — Plaintiff still has not asserted a *prima facie* case for unlawful retaliation.  As noted above, such a claim under Title VII and the NYSHRL requires that "[i] [Plaintiff] participated in a legally protected activity; [ii] his employer knew of the protected activity; [iii] an adverse employment action ensued; and [iv] a causal connection existed between the protected activity and the adverse employment action."  *Bowles*, 285 F. App'x at 814.  As discussed earlier, the NYCHRL has an even more liberal standard.

Defendant does not deny knowledge of Plaintiff's prior complaints.  Accordingly, and assuming for purposes of this motion that his prior complaints amounted to a legally protected activity, the Court finds that Plaintiff nonetheless has not established a causal connection between these complaints and the reduction in his work schedule.  In his Amended Complaint, Plaintiff states only that (i) his hours were reduced after he informed Defendant of his religious obligations (Am. Compl. 3), and separately, (ii) he "previously complained that [his] rights were being violated with respect to, among other items, denial of equal pay, denial of holiday pay, and double shifts," some time after which his schedule was reduced (*id.* at 5).  Neither statement establishes a causal connection, and the prior letters written by

26

Plaintiff to Defendant all date back to 2010, vitiating any suggestion of a temporal connection.  (*See* Pl. Opp., Ex. 1B, 1C, 1D; Lizardi Aff., Ex. B).  *See, e.g.*, *Hollander* v. *Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding that the passage of three months was too long to suggest a causal relationship between complaint and adverse employment action); *Husser* v. *N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 274 (E.D.N.Y. 2015) ("The Second Circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.' Nevertheless, gaps exceeding two to three months have generally — but not universally — been found too long to support an inference of causality." (internal citations omitted)); *see generally Clark Cty. Sch. Dist.* v. *Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'  Action taken (as here) 20 months later suggests, by itself, no causality at all." (internal citations omitted)).

In any event, even were the Court to assume that Plaintiff had established a causal connection, Defendant has presented a legitimate and non-retaliatory reason for reducing Plaintiff's schedule — Plaintiff's failure to appear for assigned shifts — that Plaintiff has failed to refute.  As discussed above, Defendant's personnel records reflect repeated attempts to contact

Plaintiff regarding his missed work, along with a note indicating that Plaintiff would need to speak to Human Resources personnel before resuming work. (Lizardi Aff., Ex. C).  Given Defendant's proffered justification for Plaintiff's reduced schedule, substantiated by Defendant's documentary evidence, in conjunction with Plaintiff's failure to demonstrate that considerations of his religion played *any* role, much less a "but-for" role, in the conduct alleged, Plaintiff's claim for retaliation must fail under Title VII, the NYSHRL, and even the more liberal NYCHRL.

## CONCLUSION

In resolving the parties' motions, the Court has been mindful of Plaintiff's *pro se* status and of the inherent difficulty in mounting discrimination claims that turn on an employer's intent.  Precisely for this reason, the Court has excused Plaintiff's non-compliance with Rule 56.1 and construed each of his arguments as liberally as law and logic will permit.  The Court has also considered the difference in standards for claims under Title VII, the NYSHRL, and the NYCHRL.  That said, the various iterations of Plaintiff's discrimination claims are wholly dependent on Plaintiff's testimony, and that testimony is belied by contemporaneous documentary evidence, by Plaintiff's conduct at and statements to his subsequent employer, and, most pointedly, by Plaintiff's own inconsistent sworn statements.  Considering the record in its totality, the Court is convinced that no reasonable juror could find in Plaintiff's favor.

Defendant's motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED.  The Clerk of Court is directed

to terminate all pending motions, adjourn all remaining dates, and close this case.

      SO ORDERED.

Dated:      November 28, 2016
             New York, New York

                                        KATHERINE POLK FAILLA
                                United States District Judge

*A copy of this Order was mailed by Chambers to:*

Nata S. Bob
2055 Valentine Avenue
Apt # 2B
Bronx, NY 10457